UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

AMVS, INC. d/b/a SUPER 8 MOTEL,

                Plaintiff,

– against –

MT. HAWLEY INSURANCE
COMPANY,

                Defendant.

**OPINION & ORDER**

22-cv-10782 (ER)

RAMOS, D.J.:

    AMVS, Inc. d/b/a Super 8 Motel ("AMVS") brings this action against Mt. Hawley Insurance Company ("Mt. Hawley") for breach of contract and violation of the Texas Insurance Code. AMVS seeks damages for the breach of contract, and recovery of attorneys' fees for the violation of the Texas Insurance Code.[1] Presently, Mt. Hawley moves for summary judgment of AMVS' claims. For the reasons set forth below, Mt. Hawley's motion is GRANTED.

**I. BACKGROUND**

    **A. Factual Background**[2]

    Mt. Hawley, an Illinois-based insurer, issued a commercial property insurance policy, No. MPC0171025, to AMVS, a Texas-based hotel operator, for the period from December 14, 2020 to December 14, 2021 (the "Policy"). Doc. 33 at ¶ 1. The Policy covered a Super 8 Motel at 1115 S. Expressway 83, Harlingen, Texas 78550 (the "Property") for "Special [causes of loss] including Equipment Breakdown excluding

---

[1] In response to Mt. Hawley's motion for summary judgment, AMVS argues that they are entitled to recover attorneys' fees under New York law as well. *See* Doc. 36 at 7.

[2] The following facts are taken from the parties' Local Rule 56.1 Statements, Docs. 33 (Def.'s SOF), 36-1 (Pl.'s SOF). The facts recited here are undisputed unless otherwise noted.

Earthquake and Flood." Doc. 35-1 at 7. The Policy has a per occurrence loss limit of $3,880,000, and a deductible of $25,000 per windstorm. *Id.* at 7, 9.

The Policy imposes a condition that, in the event of loss or damage to their covered property, AMVS must "[g]ive [Mt. Hawley] prompt notice of the loss or damage." *Id.* at 22; *see also id.* ("[AMVS must] [a]s soon as possible, give us a description of how, when and where the loss or damage occurred."). Moreover, a Windstorm or Hail Loss Reporting Limitation Addendum to the Policy provides:

> Regardless of anything to the contrary in this policy to which this endorsement is attached, the following limitations apply in reference to reporting of claims under this policy:
>
> With respect to loss or damage caused by windstorm or hail, including any named storm, you must give us prompt notice of the loss or damage and include a description of the property involved, and as soon as possible give us a description of how, when and where the loss or damage occurred. In no event may a claim be filed with us later than one year after the date of the loss or damage that is the subject of the claim.

*Id.* at 88.

A choice-of-law provision in the Policy states that "[a]ll matters arising hereunder including questions relating to the validity, interpretation, performance and enforcement of this Policy shall be determined in accordance with the law and practice of the State of New York (notwithstanding New York's conflicts of law rules)." *Id.* at 93.

According to AMVS, a windstorm damaged the Property's roof, stucco, windows, and interior on October 22, 2021. Doc. 33 at ¶ 2. AMVS's corporate representative, Vijay Jhaveri, was present at the Property during the storm. *Id.* at ¶ 5. Jhaveri testified at a deposition that there was water damage to the Property, including to his own suite. *Id.*

Nearly three months later, on January 12, 2022, AMVS, through its attorney, reported a claim under the Policy for the October 22, 2021 windstorm damage. *Id.* at ¶ 2. Jhaveri maintains, however, that he reported the loss to his insurance agent "way ahead"

of January 12, 2022.  Doc. 36-1 at ¶ 2.  Jhaveri testified that he called an insurance agent about the damage, but has "no records" of it.  *Id.*

On January 14, 2022, Mt. Hawley acknowledged receipt of the claim.  Doc. 36-1 at ¶ 3.  Mt. Hawley assigned Lance Grigar of Engle Martin & Associates as their field adjuster.  *Id.*  Grigar investigated the claim and submitted a written report of his findings on February 25, 2022.  *Id.*  In his report, Grigar noted an "initial loss value of $50,000.00 (resulting in a net estimate of loss of $25,000 after application of the $25,000 deductible)" and he found that "the date of loss was within the effective policy period." *Id.*  Subsequently, Mt. Hawley's engineer, Ryan Kalina, PhD, P.E. of Forensix Consulting, submitted a report on April 12, 2022.  *Id.*  Kalina's report concluded that the only covered damage attributable to the October 22, 2021 windstorm was twenty-six detached shingles on the roof.  Doc. 35-3 at 33.  AMVS contends, however, that the windstorm caused irreparable damage to the Property's roof and envelope, resulting in damages in the amount of $652,667.20.[3]  Doc. 36-1 at ¶ 3.

Mt. Hawley denied the claim on June 23, 2022.  Doc. 35-4 at 1.  In their claim decision letter, Mt. Hawley concluded that the damage to twenty-six shingles "would not exceed the applicable [$25,000] Policy deductible[.]"  *Id.* at 7.  Mt. Hawley also noted in the letter that "AMVS did not timely notify Mt. Hawley of this Claim pursuant to the Loss Conditions" set forth in the Policy, because "AMVS contends that the loss occurred on October 22, 2021, [but] it did not notify Mt. Hawley until nearly three months later, on January 12, 2022."  *Id.*

### B. Procedural History

AMVS commenced this action on December 21, 2022, alleging breach of contract based on Mt. Hawley's refusal to pay the damages allegedly due, and failure to promptly pay the claim in violation of the Texas Insurance Code.  Doc. 1 at ¶¶ 22–30.  AMVS

---

[3] Elsewhere in their briefing on the instant motion, AMVS proffers "an initial damage estimate . . . reflecting a replacement cost value of $856,773.13."  Doc. 36-1 at ¶ 4.

3

seeks damages for the breach of contract and attorney's fees for the prompt payment violation. *Id.* at ¶¶ 31–34. Mt Hawley answered the complaint on February 17, 2023. Doc. 12.

Mt. Hawley moved for summary judgment on August 21, 2024. Doc. 32. Mt. Hawley argues that AMVS' late notice of the loss defeats the breach of contract claim, and that AMVS cannot sustain its prompt payment claim under New York law. Doc. 34 at 5–6. AMVS argues in response that it complied with the prompt notice condition, which it construes to allow for reporting up to one year from a wind-related loss. Doc. 36 at 6. AMVS also maintains that Jhaveri's deposition testimony that he notified an insurance agent about the loss before January 12, 2022 creates an issue of fact as to when they reported the loss. *Id.* at 6–7. Lastly, AMVS now asserts its claim for attorney's fees under New York law, contending that Mt. Hawley exhibited bad faith by denying its claim. *Id.* at 7–8. Mt. Hawley filed a reply on September 11, 2024. Doc. 37.

Mt. Hawley subsequently filed two notices of supplemental authority. On October 3, 2024, Mt. Hawley filed its first notice, advising the Court of *HKB Hospitality LLC v. Mt. Hawley Ins. Co.*, No. 23 Civ. 372 (JPO), 2024 WL 4349508 (S.D.N.Y. Sept. 30, 2024) (granting summary judgment for Mt. Hawley on a breach of contract claim due to Texas plaintiff's late notice). Doc. 40. On January 14, 2025, Mt. Hawley filed its second notice, advising the Court of three separate judicial opinions: *Hedvat v. Chubb Nat'l Ins. Co.*, No. 24-1194, 2024 WL 4615824 (2d Cir. Oct. 30, 2024) (affirming dismissal of breach of contract claim against insurer because of insured plaintiff's late notice); *US Rubber Corp. v. Mt. Hawley Ins. Co.*, No. 23 Civ. 7618 (AT), 2024 WL 5268848 (S.D.N.Y. Dec. 31, 2024) (granting summary judgment for Mt. Hawley on Texas law claims because of policy's choice-of-law provision); and *MY Investments, LLC v. Starr Surplus Lines Ins. Co.*, No. 23 Civ. 4229 (VEC), 2024 WL 4859027 (S.D.N.Y. Nov. 20, 2024) (applying New York choice-of-law rules to insurance action). Doc. 43. On January 15, 2025, AMVS filed a sur-reply in opposition to the motion for summary

4

judgment, distinguishing *Hedvat* from the instant action. Doc. 46 (citing 2024 WL 4615824).

## II.   STANDARD OF REVIEW

Summary judgment is appropriate where "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "An issue of fact is 'genuine' if the evidence is such that a reasonable jury could return a verdict for the non-moving party." *Senno v. Elmsford Union Free Sch. Dist.*, 812 F. Supp. 2d 454, 467 (S.D.N.Y. 2011) (citing *SCR Joint Venture L.P. v. Warshawsky*, 559 F.3d 133, 137 (2d Cir. 2009)). A fact is material if it might affect the outcome of the litigation under the governing law. *Id.* The party moving for summary judgment is first responsible for demonstrating the absence of any genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). If the moving party meets its burden, "the nonmoving party must come forward with admissible evidence sufficient to raise a genuine issue of fact for trial in order to avoid summary judgment." *Saenger v. Montefiore Med. Ctr.*, 706 F. Supp. 2d 494, 504 (S.D.N.Y. 2010) (internal quotation marks omitted) (quoting *Jaramillo v. Weyerhaeuser Co.*, 536 F.3d 140, 145 (2d Cir. 2008)).

In deciding a motion for summary judgment, the Court must "construe the facts in the light most favorable to the non-moving party and must resolve all ambiguities and draw all reasonable inferences against the movant." *Brod v. Omya, Inc.*, 653 F.3d 156, 164 (2d Cir. 2011) (quoting *Williams v. R.H. Donnelley, Corp.*, 368 F.3d 123, 126 (2d Cir. 2004)). However, in opposing a motion for summary judgment, the non-moving party may not rely on unsupported assertions, conjecture or speculation. *Ridinger v. Dow Jones & Co.*, 651 F.3d 309, 317 (2d Cir. 2011). To defeat a motion for summary judgment, "the non-moving party must set forth significant, probative evidence on which a reasonable fact-finder could decide in its favor." *Senno*, 812 F. Supp. 2d at 467–68 (citing *Anderson v. Liberty Lobby*, 477 U.S. 242, 256–57 (1986)).

For claims under New York law, the Court should determine how the New York Court of Appeals would decide them. *Reddington v. Staten Island Univ. Hosp.*, 511 F.3d 126, 133 (2d Cir. 2007) (citation omitted). Decisions from New York's intermediate appellate courts are "helpful indicators," but this Court is not bound by those decisions. *Id.*

## III. DISCUSSION

### A. Choice of Law

The parties first dispute whether New York or Texas law governs. AMVS "maintains that Texas law, not New York law, should apply to this matter," despite the choice-of-law provision in the Policy selecting New York law.[4] Doc. 28 at 2; *see* Doc. 35-1 at 93.

As a federal court sitting in New York, this Court applies New York's choice-of-law rules. *In re Coudert Bros. LLP*, 673 F.3d 180, 186 (2d Cir. 2012) ("It is well established that a federal court sitting in diversity must generally apply the choice of law rules of the state in which it sits."). Section 5-1401 of New York's General Obligations Law provides that the parties to a contract involving at least $250,000 "may agree that the law of this state shall govern their rights and duties in whole or in part, whether or not such contract, agreement or undertaking bears a reasonable relation to this state." *HKB Hospitality*, 2024 WL 4349508, at *2 (quoting N.Y. Gen. Oblig. Law § 5–1401). Section 5–1401 applies to the Policy at issue here, which has a per occurrence loss limit of $3,880,000. *See* Doc. 35-1 at 7.

In *Ministers & Missionaries Benefit Board v. Snow*, the New York Court of Appeals held that "New York courts should not engage in any conflicts analysis where the parties include a choice-of-law provision in their contract[.]" 45 N.E.3d 917, 922 (N.Y.

---

[4] AMVS chiefly argues under New York law in its briefing against the instant motion. *See* Doc. 28 at 2 ("Plaintiff limits its arguments here to New York law but reserves its right to argue choice of law in future briefing/arguments.").

2015). The New York Court of Appeals went further in *Petróleos de Venezuela S.A. v. MUFG Union Bank, N.A.*, emphasizing that, under § 5-1401, "when the parties have chosen New York law, a court *may not* contravene that choice through a common-law conflicts analysis." 235 N.E.3d 949, 957 (N.Y. 2024) (emphasis added). Here, the parties expressly chose New York law. *See* Doc. 35-1 at 93 ("[a]ll matters arising hereunder including questions relating to the validity, interpretation, performance and enforcement of this Policy shall be determined in accordance with the law and practice of the State of New York (notwithstanding New York's conflicts of law rules)." Accordingly, "the Court is obligated to apply the choice-of-law regime of New York, not Texas, and that regime mandates that New York law applies." *U.S. Rubber Corp.*, 2024 WL 5268848, at *3 (internal citations and quotations omitted).

### B. Breach of Contract

"Under New York law, compliance with a notice-of-occurrence provision in an insurance policy is a condition precedent to an insurer's liability under the policy." *Hedvat*, 2024 WL 4615824, at *1 (quoting *Sparacino v. Pawtucket Mut Ins. Co.*, 50 F.3d 141, 143 (2d Cir. 1995)). "Where the policy holder does not comply with this condition precedent, their failure to do so 'as a matter of law, vitiates the contract.'" *Id.* (quoting *Great Canal Realty Corp. v. Seneca Ins. Co.*, 833 N.E.2d 1196, 1197 (N.Y. 2005)); *see also Minasian v. IDS Prop. Casualty Insurance Co.*, 676 Fed. Appx. 29, 31 (2d. Cir. 2017) (citations omitted) ("Timely notice is a condition precedent to insurance coverage under New York law, and the failure to provide such notice relieves the insurer of its coverage obligation, regardless of prejudice.").

"When an insurance policy requires that notice of an occurrence or claim be given promptly, like the one at issue here requiring notice 'as soon as possible,' notice must be given within a reasonable time in view of all of the facts and circumstances." *Cambridge Realty Co., LLC v. St. Paul Fire & Marine Ins. Co.*, 421 F. App'x 52, 56 (2d Cir. 2011) (citation omitted); *see* Doc. 35-1 at 22 ("[AMVS must] [a]s soon as possible, give us a

7

description of how, when and where the loss or damage occurred."). "When considering the reasonableness of a delay, 'courts have found relatively short periods to be unreasonable as a matter of law.'" *Hedvat*, 2024 WL 4615824, at *3 (quoting *Travelers Ins. Co. v. Volmar Const. Co.*, 300 A.D.2d 40, 42–43 (1st Dep't 2002)); *see American Home Assur. Co. v. Republic Ins. Co.*, 984 F.2d 76, 78 (2d Cir. 1993) (collecting cases that hold delays ranging from 10 to 53 days unreasonable as a matter of law, thereby discharging the insurer's coverage obligations).

"A notice obligation is triggered when the circumstances known to the insured . . . would have suggested to a reasonable person the possibility of a claim." *HKB Hospitality*, 2024 WL 4349508, at *3 (internal quotations omitted) (quoting *Minasian*, 676 F. App'x at 31). Here, AMVS' corporate representative Vijay Jhaveri was present at the Property on October 22, 2021—during the windstorm—and he observed damage to the Property, including his own suite. Doc. 33 at ¶ 5. Accordingly, the possibility of a claim was clear on October 22, 2021, the very day of occurrence, thereby triggering the Policy's notice obligation. *See HKB Hospitality*, 2024 WL 4349508, at *3 (finding that windstorm damage observed by the insured's corporate representative suggested the possibility of a claim on the day of the storm).

Mt. Hawley argues that AMVS's January 12, 2022 letter reporting the claim constitutes untimely notice, thereby discharging its coverage obligations. Doc. 34 at 16–18. AMVS first responds that the Windstorm or Hail Loss Reporting Limitation Addendum to the Policy creates a longer acceptable notice period. Doc. 36 at 6–8. The addendum provides:

> Regardless of anything to the contrary in this policy to which this endorsement is attached, the following limitations apply in reference to reporting of claims under this policy:
>
> With respect to loss or damage caused by windstorm or hail, including any named storm, you must give us prompt notice of the loss or damage and include a description of the property involved, and as soon as possible give us a description of how, when and where the

8

> loss or damage occurred. In no event may a claim be filed with us later than one year after the date of the loss or damage that is the subject of the claim.

Doc. 35-1 at 88. This provision, AMVS argues, "expressly allows for hail/wind losses to be reported up to one (1) year from the date of loss." Doc. 36 at 6.

"Under New York law, insurance policies are interpreted according to general rules of contract interpretation." *Olin Corp. v. OneBeacon Am. Ins. Co.*, 864 F.3d 130, 147 (2d Cir. 2017) (citation omitted). "In interpreting a contract under New York law, words and phrases . . . should be given their plain meaning, and the contract should be construed so as to give full meaning and effect to all of its provisions." *Process America, Inc. v. Cynergy Holdings, LLC*, 839 F.3d 125, 133 (2d Cir. 2016) (citation and internal quotations omitted). "An interpretation of a contract that has the effect of rendering at least one clause superfluous or meaningless is not preferred and will be avoided if possible." *Id.* (quoting *LaSalle Bank National Ass'n v. Nomura Asset Capital Corp.*, 424 F.3d 195, 206 (2d Cir. 2005)).

Here, AMVS' interpretation of the addendum fails because it renders the prior sentence—requiring that AMVS "must give" Mt. Hawley "prompt notice of the loss or damage" and provide a description of the loss "as soon as possible"—meaningless. *See* Doc. 36 at 6. Conversely, Mt. Hawley gives meaning to both parts of the addendum, arguing that the provision mandates prompt notice in relation to when a claim is discovered, and further provides that "wind and hail claims reported more than one year after the reported loss are untimely regardless of the circumstances surrounding the delay." Doc. 37 at 4. "In other words, the Addendum imposes two independent requirements:" (1) AMVS "must give prompt *notice* to Mt. Hawley—within a reasonable time from when it should have become aware of 'the possibility of a claim'"; and (2) AMVS "must file a *claim* within one year of the date of loss or damage, regardless of when [AMVS] might discover its claim." *HKB Hospitality*, 2024 WL 4349508, at *4 (citation omitted) (emphasis added). "This accords with the word 'limitations,' in plural

9

form, in the first sentence of the Addendum," rendering both limits independently enforceable. *Id.* "It is the only reasonable interpretation that follows from the plain language of the Policy and does not render one of its two clauses superfluous." *Id.*

Secondly, AMVS contends that Jhaveri's testimony creates an issue of fact as to when they reported the loss. Doc. 36 at 6–7. AMVS notes that "[w]hile the exact timing is unclear, Mr. Jhaveri testified that he notified Plaintiff's insurance agent of the loss 'way ahead' of the written notice of loss subsequently provided by Plaintiff's counsel on January 12, 2022." *Id.* (citing Doc. 36-1 at ¶¶ 2, 5). In reply, Mt. Hawley argues that Jhaveri's "self-serving, uncorroborated testimony" fails to raise a genuine issue of fact sufficient to defeat summary judgment. Doc. 37 at 1–2.

"Before a district court can draw all ambiguities and inferences in favor of the non-moving party, as it must do at the summary judgment stage, that party is still required to 'offer some hard evidence showing that its version of the events is not wholly fanciful.'" *Windward Bora LLC v. Browne*, 110 F.4th 120, 131 n.13 (2d Cir. 2024) (quoting *D'Amico v. City of New York*, 132 F.3d 145, 149 (2d Cir. 1998)). "It is a bedrock rule of civil procedure that 'a district court generally cannot grant summary judgment based on its assessment of the credibility of the evidence presented.'" *Frost v. New York City Police Dep't*, 980 F.3d 231, 245 (2d Cir. 2020) (quoting *Agosto v. INS*, 436 U.S. 748, 756 (1978)). Nonetheless, "the mere existence of some evidence may not be enough to defeat summary judgment, as '[a] grant of summary judgment is proper' where a nonmovant's supporting evidence 'is so slight that no rational jury could' find in [their] favor." *Bryant v. Iheanacho*, 859 Fed. Appx. 604, 605 (2d. Cir 2021) (quoting *Viola v. Philips Medical Systems of North America*, 42 F.3d 712, 716 (2d Cir. 1994)).

Here, AMVS relies solely on the vague testimony that Jhaveri called his insurance agent "way ahead" of the January 12, 2022 claim letter. Doc. 36 at 6–7. Jhaveri acknowledges that he has "no records" of calling the insurance agent, and AMVS does not proffer any corroboration or further specificity. *See* Doc. 36-1 at ¶ 6. Courts in this

10

District have held that "a non[-]moving party's self-serving statement, without direct or circumstantial evidence to support the charge, is insufficient to defeat a motion for summary judgment." *Adler v. Penn Credit Corp.*, No. 19 Civ. 7084 (KMK), 2022 WL 744031, at *9 (S.D.N.Y. Mar. 11, 2022) (quoting *Wheeler v. Kolek*, No. 16 Civ. 7441 (PMH), 2020 WL 6726947, at *8 (S.D.N.Y. Nov. 16, 2020)) (granting defendant's motion for summary judgment in spite of plaintiff's vague deposition testimony). The Court finds that Jhaveri's vague and uncorroborated reference to a call "way ahead" of the January 12, 2022 letter "is so slight that no rational jury could find in" their favor. *Bryant*, 859 Fed. Appx. at 605 (internal quotations omitted). AMVS thus fails to raise a genuine issue of material fact as to when they provided notice of the claim.

"Because New York courts have repeatedly held notice delays of less than two months to be unreasonable as a matter of law," and because AMVS fails to show any excuse to justify its 82-day delay in reporting the claim to Mt. Hawley, the Court concludes that AMVS' notice was untimely. *HKB Hospitality*, 2024 WL 4349508, at *5. Mt. Hawley was thus relieved of its coverage obligations, and accordingly the Court grants Mt. Hawley's motion for summary judgment on the breach of contract claim.

### C. Bad Faith

AMVS seeks to recover its expenses from bringing this action. *See* Doc. 1 at ¶¶ 33–34. In its complaint, AMVS based its request for attorneys' fees on the Texas Insurance Code. *Id.* As discussed above, this action is governed by New York law, and thus AMVS' claim for fees under Texas law is unavailing. However, in briefing the instant motion, AMVS argues that they are also entitled to recover their costs under New York law. Doc. 36 at 7.

Under New York law, "an insured may not recover the expenses incurred in bringing an affirmative action against an insurer to settle its rights under the policy." *Globecon Group, LLC v. Hartford Fire Ins. Co.*, 434 F.3d 165, 177 (2d Cir. 2006) (quoting *New York University v. Continental Insurance Co.*, 662 N.E.2d 763, 772 (N.Y.

11

1995)).  New York courts nonetheless recognize an exception, allowing recovery of costs "where there is 'more than an arguable difference of opinion between carrier and insured over coverage' and there is a showing of 'such bad faith in denying coverage that no reasonable carrier would, under the given facts, be expected to assert it.'"  *Liberty Surplus Ins. Corp. v. Segal Co.*, 420 F.3d 65, 70 (2d Cir. 2005) (quoting *Sukup v. State*, 227 N.E.2d 842, 844 (N.Y. 1967).  Importantly, there remains a strong presumption in New York against a finding of bad faith liability against an insurer.  *Hastings Development, LLC v. Evanston Ins. Co.*, 701 Fed. Appx. 40, 44 (2d Cir. 2017) (citing *Hugo Boss Fashions, Inc. v. Fed. Ins. Co.*, 252 F.3d 608, 624 (2d Cir. 2001)).

Here, AMVS fails to overcome the strong presumption against finding that an insurer denied coverage in bad faith.  AMVS centers its argument on Mt. Hawley's conclusion that only minimal damage was attributable to the October 22, 2021 windstorm.  Doc. 36 at 7–8.  In doing so, however, Mt. Hawley ignores the untimely notice referenced in the claim decision letter.  As discussed above, Mt. Hawley predicated its denial on both their assessment of the damage, which it determined was below the deductible amount, *and* AMVS' late notice of the claim.  *See* Doc. 35-4 at 7 ("AMVS did not timely notify Mt. Hawley of this Claim pursuant to the Loss Conditions [set forth in the Policy]").  Given the notice condition in the Policy, AMVS' untimely notice constituted a reasonable basis for denial in itself.

AMVS further argues that Mt. Hawley "has failed to demonstrate as a matter of law that its claim decision was *not* made in bad faith[.]"  *See* Doc. 36 at 7 (emphasis added).  Where, as here, the burden of persuasion at trial would rest with AMVS as the non-moving party, the moving party—Mt. Hawley— may satisfy their burden of production "by demonstrating that [AMVS'] evidence is insufficient to establish an essential element of [AMVS'] claim."  *Nick's Garage, Inc. v. Progressive Casualty Insurance Co.*, 875 F.3d 107, 114 (2d Cir. 2017).  As the non-moving party, AMVS may not in turn defeat summary judgment by "simply show[ing] that there is some

12

metaphysical doubt as to the material facts." *PACA Trust Creditors of Lenny Perry's Produce, Inc. v. Genecco Produce Inc.*, 913 F.3d 268, 275 (2d Cir. 2019) (quoting *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986)). AMVS' argument that Mt. Hawley failed to affirmatively demonstrate the *absence* of bad faith is thus unavailing. Accordingly, Mt. Hawley's motion for summary judgment is granted on the claim for expenses.

## IV. CONCLUSION

For the reasons set forth above, Mt. Hawley's motion for summary judgment is GRANTED.

The Clerk of Court is respectfully directed to terminate the motion, Doc. 32, enter judgment in favor of Mt. Hawley, and close the case.

It is SO ORDERED.

Dated:   January 23, 2025
          New York, New York

EDGARDO RAMOS, U.S.D.J.